**\*\*NOT FOR PRINTED PUBLICATION\*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DONALD LEE CARDWELL, | § § | |
| *Debtor-Appellant*, | § § | CIVIL ACTION No. 4-10-CV-706 |
| v. | § § § | U.S. Bankruptcy Court Case No. 09- |
| BILL GURLEY, | § § | 43121-7 and Adversary No. 09-04249 |
| *Plaintiff-Appellee*, | § § § § | |

## **MEMORANDUM OPINION ON APPEAL FROM BANKRUPTCY COURT**

Appellant, Donald Lee Cardwell, appeals an order by the bankruptcy court granting summary judgment on Appellee Bill Gurley's claim that Cardwell is not entitled to discharge his debt owed to Gurley pursuant to 11 U.S.C. § 523(a)(2)(A) and 523(a)(4). The court finds no error in the bankruptcy court's rulings, and the judgment of the bankruptcy court is therefore affirmed.

### **I. BACKGROUND**

**A. Procedural Background**

On October 2, 2009, Cardwell filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code. Gurley, a creditor, objected to the discharge, asserting that the $370,478.25 judgment he obtained against Cardwell in state court should be exempt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), 523(a)(4), and 523(a)(6). Gurley filed a motion for summary judgment asserting that Cardwell was collaterally estopped from re-litigating the findings of facts in the underlying state court judgment. Gurley argued that given

the state court's findings, there were no material issues of fact with regard to Gurley's Section 523 claims, entitling him to judgment as a matter of law.

After hearing oral argument on the issues, the bankruptcy court granted summary judgment in Gurley's favor, holding that Cardwell's discharge of the debt, evidenced by Gurley's Proof of Claim, is denied pursuant to 11 U.S.C. § 523(a)(2) and (a)(4). Cardwell appeals the bankruptcy court's order granting summary judgment.

**B. The State Court's Findings**

On March 30, 2006, Gurley and 121 Investments, a limited liability company ("LLC") equally owned by Cardwell and Gurley, filed their Original Petition in the District Court for the 134th Judicial District of Dallas County, Texas ("state court") against Cardwell for breach of fiduciary duty. Gurley alleged that Cardwell made a series of misrepresentations to him in the course of conducting business on behalf of 121 Investments. Following a two day bench trial, the state court entered judgment against Cardwell in the amount of 370,830.84 plus post-judgment interest.

Below is an excerpt of the relevant state court's findings of fact and conclusions of law:

*1. Findings of fact*

1) In March 2001, Cardwell and Gurley formed 121 Investments LLC, a Texas limited liability company of which they were equal owners and the only two members, to build and lease a building on land jointly owned in downtown Prosper, Texas. Cardwell was designated as the managing member of the LLC.

2) The cash flow provided from the leased building was vital to Gurley, a retiree.

3) By 2001 Gurley had been doing business with Cardwell for over 10 years and Gurley and Cardwell's relationship had developed into one in which Gurley placed the utmost trust and

confidence in Cardwell's management of businesses and projects in which Gurley had ownership interests. Their relationship remained one of trust and confidence until January 2008.

4) In 2005, the City of Prosper offered to acquire the 121 Investments building from Gurley and Cardwell in exchange for $195,000 cash and Tract 4 of the Hickory Creek subdivision.

5) At first, Gurley was opposed to the exchange because (I) he was an owner of another building which was leased by the City for use as a city hall and the exchange would cause him to lose that lease when the City moved to the 121 Investments building; (ii) he would have to incur considerable expense to refurbish he leased building in order to lease it to another tenant, and (iii) he would lose his half of the rental income from the 121 Investments building.

6) Cardwell, on the other hand, was in a bind for money, so over the next few weeks he persuaded Gurley to consent to the exchange by proposing that 121 Investments would acquire additional acreage adjacent to Tract 4, change the zoning over time from residential to commercial, and that he Cardwell, would manage the development to fruition. Gurley believed him, agreed to the proposal, and arranged for bank financing for 121 Investments to purchase additional land and to develop the property.

7) Many of Cardwell's statements and promises which induced Gurley to agree to the exchange were (i) materially false and misleading, and (ii) failed to disclose material facts, which if known to Gurley, would have caused him to refuse to agree to the exchange. Those false statements and promises, and failures to disclose material facts were as follows:

  a. Cardwell misrepresented, and failed to disclose to Gurley, that he had no intention of acquiring or developing Tract 4 or any additional Hickory Creek property.

  b. Cardwell misrepresented to Gurley that 121 Investments could acquire the adjacent Tract 3 for a good price, but failed to disclose that he had already arranged for the sale of Tract 3 to Hickory Creek LLC., and that he was going to receive a bribe in the form of a "fee" or "commission" of $10,000 in the deal.

  c. Cardwell failed to disclose to Gurley that Hickory Creek LLC is owned and controlled by two of Cardwell's long-time business associates, Lookadoo and Howard, and that he was building a million dollar building for Lookadoo at the time of the negotiations and exchange with the City.

  d. Cardwell failed to disclose to Gurley that he intended to quickly sell Tract 4 to Hickory Creek LLC, without Gurley's knowledge or consent, for a grossly inadequate price, and that the bribe was part of the inducement for him to do so.

  *2. Conclusions of Law*

1. Cardwell, as the managing member of 121 Investments, owed the LLC fiduciary duties of loyalty and due care as a matter of law. Since Gurley was the only other member of the LLC, such fiduciary duties accrued, and were therefore also owed, directly to Gurley by Cardwell as a matter of law.

2. Cardwell, as the managing member of 121 Investments, owed Gurley, as the only other member of the LLC, direct fiduciary duties of loyalty, due care, and full disclosure as a matter of law, independent of and in addition to, the duties he owed to the LLC. He also owed Gurley the same fiduciary duties as a result of his long-standing relationship with Gurley which caused Gurley to verst his trust and confidence in Cardwell to properly and lawfully manage their joint investments.

3. Cardwell breached all of his fiduciary duties to 121 Investments and to Gurley.

4. Gurley and 121 Investments were damaged, and Cardwell profited, by Cardwell's breach of his fiduciary duties. Cardwell is responsible for the damages he caused, and he is prohibited by law from profiting from his breaches of his fiduciary duties, which profit he must disgorge to Gurley.

## II. DISCUSSION

### A. Issues Presented

Cardwell raises three issues on appeal: (1) whether the bankruptcy court erred in applying a preclusive effect to the state court's findings; (2) whether the bankruptcy court erred in granting summary judgment in favor of Gurley making the debt non-dischargeable under 11 U.S.C. § 523(a)(2)(A) when genuine issues of material fact existed as to whether the requisite fraud existed; (3) whether the bankruptcy court erred in granting summary judgment in favor of Mr. Gurley making the debt non-dischargeable under 11 U.S.C. § 523(a)(4).

### B. Standard of Review

The bankruptcy court's findings of fact are reviewed for clear error, while its legal conclusions and any mixed questions of law and fact are reviewed de novo. *Highland Capital Mgmt. LP v. Chesapeake Energy Corp.* (*In re Seven Seas Petroleum, Inc.*), 522 F.3d 575, 583 (5th Cir. 2008). The bankruptcy court determined that Cardwell was collaterally estopped from relitigating issues that had already been litigated in state court. A bankruptcy court's decision to give preclusive effect to a state court judgment is a question of law that the court reviews de novo. *Boyce v. Greenway (In re Greenway)*, 71 F.3d 1177, 1180-81 (5th Cir. 1996). Cardwell appeals from the bankruptcy court's order granting Gurley's Motion for Summary Judgment. A bankruptcy court's grant of summary judgment is reviewed de novo. *See First Am. Title Ins. Co. v. First Trust Nat'l Ass'n* (*In re Biloxi Casino Belle Inc.*), 368 F.3d 491, 496 (5th Cir. 2004).

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056). In an action to determine the dischargeability of a debt, the creditor bears the burden of proof to establish by a preponderance of the evidence that his or her claim is not dischargeable. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659 (1991).

**C. Preclusive Effect of State Court's Findings**

Cardwell argues that the bankruptcy court erred by applying a preclusive effect to the findings made by the state court. Collateral estoppel, or issue preclusion, prevents parties from re-litigating the same issues conclusively determined between them in a previous action and applies equally to findings of fact and conclusions of law. *Arizona v. California*, 530 U.S. 392, 414-415, 120 S. Ct. 2304 (2000); *Test masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005). Collateral estoppel applies in bankruptcy dischargeability proceedings.[1] *Grogan*, 498 U.S. at 285 n.11, 111 S. Ct. at 658 n.11; *Raspanti v. Keaty* (*In re Keaty*), 397 F.3d 264, 270 (5th Cir. 2005). Parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability, although the bankruptcy court retains jurisdiction to ultimately determine the dischargeability of the debt. *Schwager v. Fallas* (*In re Schwager*), 121 F.3d 177, 181 (5th Cir. 1997).

The preclusive effect given to state court judgments under collateral estoppel is a function of the full faith and credit statute. *Id.* In deciding the preclusive effect of a state court judgment in federal court, federal courts must look to the laws of the state that rendered

---

[1] The doctrine of res judicata, or claim preclusion, does not apply in bankruptcy dischargeability proceedings. *Schwager v. Fallas* (*In re Schwager*), 121 F.3d 177, 187 (5th Cir. 1997).

judgment to determine whether courts of that state would afford judgment preclusive effect. *Matter of Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996) citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 1331-32 (1985). Under Texas law, a party is collaterally estopped from raising an issue when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Sysco Food Services v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

Appellant contends that collateral estoppel should not apply to the state court findings because the state action involved application of a different legal standard than a bankruptcy court's determination on dischargeability. Cardwell also argues that fairness concerns render preclusion inappropriate in this instance. Because Cardwell's arguments were not raised in the bankruptcy court[2], they have been waived for purposes of this appeal. *Matter of Fairchild, Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993).

Even considering the merits of Cardwell's arguments, however, it was permissible for the bankruptcy court in this case to utilize the findings made in the prior state proceeding and determine whether those findings evidence conduct on the part of Cardwell that would render the debt non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4). *See Dauterman v. Goodman*

---

[2]At the bankruptcy court, Cardwell argued that collateral estoppel did not apply because there was an appeal pending on the state court judgment when the Chapter 7 case was filed and hence, the state court judgment was not final. Application of collateral estoppel requires that there be a final judgment on the merits; interlocutory orders are not entitled to preclusive effect. *Texas v. Wellington Resources Corp.*, 706 F.2d 533, 536-37 (5th Cir.1983). However, the bankruptcy court, citing *Scurlock Oil Co. V. Smithwick*, 724 S.W.2d 1, 7 (Tex. 1986), correctly held that the state court judgment was final for purposes of collateral estoppel despite the pendency of an appeal. Cardwell also argued that even if collateral estoppel applied, the state court's findings were not sufficient to establish the claims non-dischargeable. This argument is addressed in subsections D and E below.

*Grp., Inc.* (*In re Dauterman*), No. 92-1687, 1993 WL 13569372, at *4 (5th Cir. May 20, 1993) ("As the district court noted, while the legal issues posed by section 523(a)(4) were not addressed in the [prior] proceeding, 'the facts necessary for the bankruptcy court to make the required § 523(a)(4) determinations were fully litigated.'"). The state court determined that Cardwell had breached his fiduciary duty, and made subsidiary factual findings that were necessary to that determination. Accordingly, it was proper for the bankruptcy court to treat as preclusive the prior factual findings and legal conclusions concerning Cardwell's breach of fiduciary duty under Texas law, and to then determine whether those prior findings and conclusions required the legal conclusion in this case that the debt owed by Cardwell to Gurley is nondischargeable under Sections 523(a)(2)(A) and (a)(4).

All three of the collateral estoppel requirements are satisfied in this case. First, the issues to be precluded by the Chapter 7 action were fully and fairly litigated in state court. Full and fair litigation means that the issues were actually litigated. *Matter of Garner*, 56 F.3d 677, 680 (5th Cir. 1995). An issue is actually litigated when it is raised by the pleadings, submitted for determination, and is actually determined. *Id.; See also Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985). Here, the state court held a two day bench trial on whether Cardwell breached his fiduciary duty to Gurley and the LLC. The state court made several findings of fact regarding misrepresentations and omissions made by Cardwell. These issues were fully and fairly litigated in state court.

Second, the state court's findings were essential to the state court's finding that Cardwell breached his fiduciary duty to Gurley. In determining whether the fact issues litigated in the prior action were essential to the judgment, the court must determine if it was an ultimate issue. *Tarter v. Metropolitan Stay and Loan Ass'n*, 744 S.W.2d 926, 928 (Tex. 1988). An ultimate

issue is a factual determination considered by the trier of fact that was necessary to form the basis of the judgment. *Id.* The state court's factual findings that Cardwell made misleading statements to Gurley and failed to disclose material facts form the basis for its judgment that Cardwell breached his fiduciary duties to Gurley.

Finally, it is indisputable that Gurley and Cardwell were cast as adversaries in the state court action. Because the requirements for collateral estoppel are met and the purposes of collateral estoppel— relieving parties of the cost and vexation of multiple lawsuits, conserving judicial resources, and preventing inconsistent decisions[3]— are satisfied, collateral estoppel applies. Accordingly, the doctrine of collateral estoppel prevents Cardwell from relitigating the state court's findings regarding Cardwell's misrepresentations, material omissions of fact, Gurley's reliance, and damages.

**D**. **The state court's findings are sufficient to establish Cardwell's debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).**

Section 523(a)(2)(A) provides that a debtor is not discharged from "any debt. . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Section 523(a)(2)(A) contemplates frauds involving "moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality is insufficient." *Matter of Allison*, 960 F.2d 481, 483 (5th Cir. 1992).

---

[3]*See U.S. v. Stauffer Chemical Co*., 464 U.S. 165, 177, 104 S. Ct. 575, 581 (1984)

Although earlier Fifth Circuit cases distinguish between "false pretenses", "false representations" and "actual fraud,"[4] a more recent Fifth Circuit case lists the same elements for all three. *See In Re Acosta,* 406 F.3d 367, 372 (5th Cir. 2005) (listing elements under § 523(a)(2)(A) generally); *See also Mercer,* 246 F.3d 391, 403 (5th Cir. 2001) (stating "Prior to *Field*[5]*,* some courts defined differently § 523(a)(2)(A)'s three bases. Likewise our court has applied different, but somewhat overlapping, elements of proof for § 523(a)(2)(A) actual fraud, as opposed to false pretenses/representation. We are *not* required to address whether such distinctions survived *Field* "). Accordingly, this court will consider Gurley's allegations of non-dischargeability under both false representation/false pretense and actual fraud tests.

Under both tests, for a debt to fall within Section 523(a), money, property, or services, or an extension, renewal or refinancing of credit must actually have been obtained by the false pretenses or representations. Here it is undisputed that Cardwell received money, specifically as a result of the sale of real estate, from his deception to Gurley.

*1. Elements of False Representation/False Pretense*

In order for a debtor's representation to be a "false representation or false pretense" under Section 523(a)(2), it must have been: (1) a knowing or fraudulent falsehood; (2) describing past or current facts, which was (3) relied on by the party to whom the representation was made. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1994).

In order to prove nondischargeability under an 'actual fraud" theory, the objecting creditor must prove that: (1) the debtor made representations; (2) at the time they were made the

---

[4] *See e.g., Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991), *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1292 (5th Cir.1995)

[5] 516 U.S. 59, 116 S. Ct. 437 (1995)

debtor knew they were false; 3) the debtor made the representations with the intention and purpose to deceive the creditor; 4) that the creditor relied on such representations; and 5) that the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1994).

Cardwell argues that the state court's findings do not establish the elements necessary to sustain a 523(a)(2)(A) cause of action. With regard to false pretenses or false representations, Cardwell asserts that because the state court did not specifically make findings of fraud, there was insufficient evidence to support a finding that the representations rose to the level of a fraudulent falsehood. With regard to actual fraud, Cardwell asserts there is insufficient evidence in the state court's findings to show Cardwell had an intent to deceive and that Gurley actually and justifiably relied on Cardwell's representations.

The state court's findings are sufficient to establish that Cardwell's debt is non-dischargeable under Section 523(a)(2)(A). As to the first requirement, the bankruptcy code does not define "fraudulent falsehood." However, the Fifth Circuit has found intentional and purposeful deception to satisfy this first requirement. *See Matter of Allison*, 960 F.2d 481, 483-84 (5th Cir. 1992) (stating bankruptcy court's factual determination that debtor effected an intentional and purposeful deception by feigning agreement to the first mortgage in order to get the creditor to sign the deeds of conveyance, when, in fact, he had already made or was in the process of making arrangements for first mortgage indebtedness far in excess of that limit, established a fraudulent falsehood); *See also In re Acosta*, 2003 WL 23109775 at *13 n. 166 (E.D. La. 2003)(stating "fraud can be based on any type of conduct calculated to convey a misleading impression).

Here, the state court found Cardwell made several false representations that he did not have any intent to carry out. Specifically, Cardwell misrepresented that he would acquire additional acreage adjacent to Tract 4, change the zoning from residential to commercial, and that he would manage the development to fruition. The state court found that Cardwell never had an intention to follow through on these representations. These misrepresentations constitute intentional and purposeful deception.

The second requirement is that the misrepresentations be of past or current acts. A promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise is subsequently breached. *See Matter of Allison*, 960 F.2d 481, 484 (5th Cir. 1992). A debtor's misrepresentations of his intentions, however, may constitute a false representation within the meaning of the dischargeability provision if, when the representation is made, the debtor has no intention of performing as promised. *Id.* The state court found that Cardwell had no intention of performing as promised at the time the representations were made. Accordingly, the second element is met.

The third requirement is that the creditor relied on the representation. Reliance under Section 523(a)(2)(A) means justifiable, not reasonable reliance. *Field v. Mans*, 516 U.S. 59, 70, 116 S. Ct. 437, 444 (1995)(stating "Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases"). Here, the state court specifically found that Cardwell made materially false and misleading statements and failed to disclose material facts, which if known to Gurley, would have caused him to refuse to agree to the exchange. Cardwell,

12

however, alleges that Gurley did not justifiably rely on Gurley's representations because Gurley expressly consented to the exchange of the Prosper Property in writing and Gurley knew he would lose lease revenue and incur additional expenses as a result of the exchange. Even though Gurley knew he would incur expenses and lose lease revenue, he believed he would still profit from developing Tract 4 and the adjacent tracts. Gurley's reliance on Cardwell's representations was justifiable given their long standing business relationship. Accordingly, the state court findings are sufficient to prove Gurley's reliance.

### 2. Elements of Actual Fraud

Actual fraud, by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995)(citing *Collier on Bankruptcy* ¶ 523.08[5], at 523-57 to 523-58). After comparing the standard for actual fraud with the standard for false pretenses/representations, it is clear that actual fraud contains the same elements as false pretenses/representations with the added requirements that: the debtor had the intent to deceive the creditor and the creditor sustained losses as a proximate result of the representations. The findings by the state court satisfy each of these two elements.

Intent to deceive may be inferred from reckless disregard for the truth or the falsity of a statement combined with the sheer magnitude of the resulting misrepresentation. *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005). When examining a debtor's intent under section 523(a)(2)(A), the court is required to consider whether the circumstances in the aggregate present a picture of deceptive conduct on the part of the debtor, which betrays an intent on the part of the debtor to deceive his creditors. *In re Hurst*, 337 B.R. 125, 133 (Bankr. N. D. Tex

2005). Where the debtor intends or has reason to expect a creditor to act in reliance upon the debtor's representations, there is an intent to deceive on the part of the debtor. *Id.* Here, the findings of fact made by the state court present a picture of deceptive conduct on Cardwell's behalf, betraying his intent to deceive his long time business partner Gurley.

The state court's findings of fact show that Gurley sustained losses as a proximate result of Cardwell's misrepresentations. First, Gurley lost rental income from the City of Prosper Building. Second, Cardwell sold Tract 4, without Gurley's knowledge or consent, for a grossly inadequate price. Accordingly, the state court's findings are sufficient to establish Cardwell's debt is non-dischargeable under Section 523(a)(2)(A).

**E. The state court's findings are sufficient to establish Cardwell's debt is non-dischargeable under 11 U.S.C. § 523(a)(4)**

Section 523(a)(4) provides that a debtor is not discharged from "any debt . . . for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). In order for a debt to be nondischargeable under this section, (1) the debt must have arisen while the debtor was in a fiduciary capacity with respect to the creditor; and (2) the debt must have arisen from defalcation while acting in that capacity. *See id.*; *Schwager*, 121 F.3d at 184-186. The court will address each of these issues in turn.

*1. Fiduciary Capacity Under Section 523(a)(4)*

The concept of fiduciary under Section 523(a)(4) "is narrowly defined." *LSP Inv. P'ship v. Bennett* (*In re Bennett*), 989 F.2d 779, 784 (5th Cir. 1993) (citing *Angelle v. Reed* (*In re Angelle*), 610 F.2d 1335 (5th Cir. 1980)). It applies only to technical or express trusts, and not to constructive trusts. *Id.* Further, the trust giving rise to the fiduciary relationship must exist prior to the act creating the debt, i.e. the debtor must have been a trustee prior to his or her

wrongdoing. *Id.* However, the "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to state or common law. *Id.* at 784-85. The court must first look to state law in order to determine what obligations are imposed on the debtor with respect to the relationship at issue, and then decide whether the obligations imposed under state law are sufficient to meet the federal law requirements of "fiduciary capacity" under Section 523(a)(4). *See id.*("The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists.")

Cardwell argues that section 523(a)(4) does not include the "garden variety fiduciary relationships that may exist in ordinary business transactions." The Fifth circuit, however, has held that persons exercising control of a business owe trust-type obligations to partners and shareholders that do not control the business and that the breach of such obligations is sufficient to exempt such persons from discharge under Section 523(a)(4). *See Bennett*, 989 F.2d at 779(holding Texas law imposes trust obligations on managing partners of limited partnerships and these obligations are sufficient to meet the narrow requirements of section 523(a)(4)); *See also Schwager*, 121 F.3d 177, 185 (5th Cir. 1997)(holding general partner owes trust-like obligations to limited partners that are sufficient to exempt them for discharge under section 524(a)(4); *See also Moreno v. Ashworth*, 892 F.2d 417, 421 (5th Cir. 1990)(holding officer of a corporation owed a fiduciary duty to that corporation and its stockholders such that the debts arising from the debtor/officer's self-dealing transactions were not dischargeable under section 523(a)(4)).

Cardwell further arguers that because the legal vehicle in question was a limited liability company, not a partnership, there is no authority for imposing a fiduciary duty between limited liability company members. Because a limited liability company is a relatively new form of business entity, the Fifth Circuit has likely not had occasion to address it in the context of dischargeability under Section 523(a)(4). A limited liability company, however, is a business entity that contains certain characteristics of both a corporation and a partnership. *See* 19 Tex. Prac., Business Organizations § 1:4 (3d ed.). Under Texas law, managing partners owe trust obligations to the partnership, having a duty of loyalty and due care as well as being under an obligation to discharge their duties in good faith and in reasonable belief that they are acting in the best interest of the partnership. *McBeth v. Carpenter,* 565 F.3d 171, 177 (5th Cir.2009) Likewise, directors and officers of a corporation owe the fiduciary duties of obedience, care and loyalty to the corporation and its shareholders. *Sherman v. FSC Realty LLC (In re Brentwood Lexford Partners, LLC),* 292 B.R. 255, 260 (Bankr. N.D. Tex.2003). While the Texas Business Organizations Code does not directly address the duties owed by limited liability company managers to members, certain provisions are premised on the assumption that such duties exist. *See e.g.* V.T.C.A. Business Organizations Code § 101.401 (stating "the company agreement of a limited liability company may expand or restrict any duties, including fiduciary duties . . that a member, manager, officer , or other person has to the company or to a member or manager of the company").

The state court found that Cardwell, as managing member of the LLC, owed Gurley, direct fiduciary duties of loyalty, due care, and full disclosure as a matter of law.[6] Accordingly,

---

[6]The state court also concluded that Cardwell owed Gurley the same fiduciary duties as a result of his long-standing relationship with Gurley which caused Gurley to vest his trust and

16

this court sees no reason to distinguish this case, simply because the entity was a limited liability company, from prior Fifth Circuit precedent concluding that managing members of partnerships and officers of corporations were not entitled to discharge under section 523(a)(4).

*2. Defalcation Under Section 523(a)(4)*

Defalcation is defined as "a willful neglect of duty, even if not accompanied by fraud or embezzlement." *Schwager*, 121 F.3d at 184. Unlike fraud, defalcation does not require actual intent. *Id.* at 185. However, it does require some level of mental culpability; "willful neglect" is essentially a recklessness standard. *Id.* "Willful neglect" is measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known. *Office of Thrift Supervision v. Felt* (*In re Felt*), 25 F.3d 220, 226 (5th Cir. 2001). "The objective standard charges the debtor with knowledge of the law without regard to an analysis of his actual intent or motive." *Id.* Cardwell argues that because the state court did not find defalcation, there is no evidence that he neglected his duty or had the "requisite intent" or "culpability" to do so.

While the state court did not make any specific findings as to defalcation, as that issue was not before the court at that time, it did make factual findings that were necessary to its determination that Cardwell had breached his fiduciary duty. Specifically, the state court found that Cardwell made several statements and promises which were materially false and misleading and failed to disclose material facts. Those prior factual findings supply the basis for the bankruptcy court's determination of "willful neglect" in the adversary proceeding.

---

confidence in Cardwell to properly and lawfully manage their joint investments. A relationship involving confidence, trust, and good faith is too broad to satisfy the federal standard of fiduciary duty. *Gupta v. E. Idaho Tumor Insti., Inc., (In re Gupta)*, 394 F.3d 347, 352 (5th Cir. 2004). Here, however, the state court's finding of Cardwell's fiduciary duty was not predicated solely on the parties' long-standing relationship.

*See Dauterman*, 1993 WL 13569372, at *3 to *4. Collateral estoppel bars Cardwell from relitigating these prior findings. These prior findings are sufficient to support the bankruptcy court's finding in the adversary proceeding that a reasonable person in Cardwell's position, even if he didn't actually know he owed fiduciary duties, knew or reasonably should have known that it was reckless or wrongful to make several misrepresentations and non-disclosures in connection with a joint business venture. This court finds no error in the bankruptcy court's holding below that Cardwell's actions evidence a willful neglect of his fiduciary duties to Gurley and thus constitute defalcation under Section 523(a)(4).

### III. CONCLUSION

The bankruptcy court did not err in applying a preclusive effect to the state court's findings. The bankruptcy court's judgment that Cardwell's debt to Gurley is nondischargeable under Sections 523(a)(2)(A) and (a)(4) is supported by the findings by the state court. Accordingly, it is **ORDERED** that the bankruptcy court's November 3, 2010 Order granting Gurley's motion for summary judgment is hereby **AFFIRMED**.

So **ORDERED** and **SIGNED** this **16** day of **December, 2011.**

_____
Ron Clark, United States District Judge